3pw 49
144　339

## WILSON *against* SPROUL.

The legal foundation of an action on the case for seduction, is the loss of service. The relation of master and servant must exist between the plaintiff and the person seduced, at the time when the injury is committed.　If the daughter be under the age of twenty-one, she is the servant of her father, *de jure;* and his right to command her service is sufficient evidence of her being his servant.　If she be above that age, there must be some evidence of the relation of master and servant.
A prosecution and conviction for fornication and bastardy, is not a bar to a civil suit, by the master, for the seduction of the prosecutrix.
In an action for seduction, when a relationship exists between the plaintiff and the seduced, proof of the situation of the plaintiff's family, and their general good character, is competent to be given to the jury, for the purpose of increasing the damages.
It is not competent for the plaintiff to give evidence of the good character of the seduced, unless it be first attacked by the defendant.

ERROR to the Common Pleas of *Allegheny* county.

This was an action on the case brought by *Robert Sproul* against *John Wilson*, for debauching *Polly Porter*, the alleged servant of the plaintiff.　She was sworn, and testified as follows:

"That the plaintiff is her brother-in-law; she had resided at his house nine years before the child was born.　That on the 27th of March, 1826, she was gotten with child by the defendant; that it was born on the 27th of November, 1826, at which time she was twenty-eight years old.　The defendant was intimate in the family

(Wilson *v.* Sproul.)

of plaintiff, and lived one-fourth mile distant; that at the birth of the child, she was nursed by the plaintiff's wife; was confined two weeks, and worked but little for four weeks. That the parents of witness are both dead—her mother many years ago, and her father in July, 1827. Witness left plaintiff's house when the child was eleven months old. She was not in debt to the plaintiff when she left his house. He owed her four or five dollars, for money he had borrowed of her. That she boarded at the plaintiff's house, and paid him in weaving, and other work. That she wove for the neighbors, and sometimes received the money herself, and it was sometimes paid to the plaintiff towards her boarding. That she had her own bed at the house of the plaintiff. That when she was not weaving for the neighbors, she sometimes worked for herself. That sometime before she left the plaintiff's house, she had a settlement with him.

Plaintiff's counsel then offered to prove, that the plaintiff and his wife and family, were persons of good character; that *Polly Porter* was a person of good character, and that nothing had been heard against her till this affair of the defendant. To which evidence defendant's counsel objected; and the same was admitted by the court, and defendant's counsel excepted to the opinion.

Defendant's counsel then gave in evidence the record of the conviction of the defendant, for fornication and bastardy, and the sentence of the court thereupon: and it was testified by *Polly Porter*, that the moneys mentioned in the sentence of the court, had been all paid by the defendant, except for keeping her child the last two months.

Defendant's counsel then requested the court to charge the jury: 1. That if they believe the facts stated by *Polly Porter*, the plaintiff is not entitled to recover. 2. That defendant, having been convicted of the alleged fornication and bastardy, and having paid agreeably to the sentence of court, he is not, under all the circumstances of the case, liable in this suit; the same having been brought to recover a second satisfaction for the same injury. The court, thereupon, charged the jury against the defendant, upon both points submitted; and that the plaintiff was entitled to recover, if the jury believed the facts stated by the witness, *Polly Porter*. The court further stated, that in estimating the damages, the jury should take into their consideration, not only the injury done to the feelings of the plaintiff, but the wounded and injured feelings of those who were connected with and related to the victim of defendant's seduction.

*W. Forward* for plaintiff in error, cited *Nicholson* v. *Stryker*, 10 *Johns.* 115. 3 *Stark. Ev.* 1307.

*W. W. Fetterman* for defendant in error, cited *Wheat's Selwin*, 292. *Hornketh* v. *Barr*, 8 *Serg. & Rawle*, 36. 3 *Stark.* 1310.

(Wilson *v.* Sproul.)

The opinion of the court was delivered by

Ross, J.—The legal foundation of this action, and that which constitutes the plaintiff's right to recover, is the loss of service. The relation of master and servant must exist between the plaintiff and the person seduced, at the time when the injury is committed.    If the daughter be under the age of twenty-one, she is the servant of her father, *de jure;* and his *right* to command her services will be sufficient proof of her being his servant.    But if she be above the age of twenty-one, there must be some evidence of the relation of master and servant—some proof of actual service performed.    The slightest acts of service have, however, been held sufficient—such as occasionally milking cows, making tea, and the like.    8 *Serg. & Rawle,* 36, 38. 2 *Sel. N. P. Whart. Ed.* 292. *Saund. on Plead. & Ev.* 784.    The loss of service being thus the gist of the action, it is not necessary that the plaintiff should be the parent of the person seduced.    An aunt may maintain an action for the seduction of her niece.    So, also, a person may maintain an action for the seduction of an adopted child.    But in such cases, the child must be under age, and actually employed in the service of the plaintiff.    *Saund. on Pl. & Ev.* 785.    2 *Reed's Black.* 538, 41, and cases there cited.    In the case under consideration, the seduced was twenty-eight years of age, and was neither the daughter, niece, nor servant of the plaintiff below.    She paid him for her boarding, and was in every respect her own mistress, and disposed of her services as she saw proper.    There is no evidence that she performed the slightest acts of service.    She was neither the plaintiff's servant, *de jure,* nor *de facto;* and consequently he has not brought himself within any of the legal principles requisite for him to support this action.    The court, therefore, erred in charging the jury, that if they believed the testimony of *Polly Porter,* the plaintiff was entitled to recover.    See 10 *Johns. Rep.* 115. 9 *Johns. Rep.* 387.

The court below were, however, right in their charge to the jury upon the second point submitted to them by the defendant's counsel, to wit: That although the defendant had been convicted of the alleged fornication and bastardy, and had paid agreeably to the sentence of the court, still he might be liable in this suit.    A prosecution for fornication and bastardy is no bar to an action against the same individual for the seduction of the person who may have prosecuted the case of fornication and bastardy.    The prosecution is in the nature of a proceeding to compel the defendant to support the child, and relieve the public from the expense of its maintenance.    The action of seduction is founded on the loss of service, and damages are given for the injury thus received, and also in some measure as a compensation for wounded feelings.    It is not second satisfaction for the same injury.

(Wilson *v.* Sproul.)

But, though a person cannot sue for debauching his child, merely in the character of a parent, (the gist of the action being the loss of service,) still, courts of justice have, in order to suppress this vice, so pernicious in its consequences, gone very far in sustaining this action, and have permitted a great latitude in the admission of evidence. They have, for the purpose of increasing damages, admitted proof of the situation of the plaintiff's family; the number of his daughters; their general good character; the distress of mind; the family disgrace, and other matters of aggravation. 2 *Saund. on Pl. & Ev.* 350, 1, 2. But where no relationship subsists between the plaintiff and seduced, such evidence could have little or no influence; and would indeed be improperly received. For certainly the misconduct of a mere servant girl could not affect the character of plaintiff's daughters, or bring disgrace upon his family. But where the seduced is a connection of the plaintiff, such evidence would not only be very properly received, but would be of great importance in assessing damages. In this case, the plaintiff was the brother-in-law of *Polly Porter*, and if he had brought himself within the principles upon which such actions are sustained, it would have been correct for him to give evidence of the good character of himself and family; and also proper for the jury to take into consideration, not only the injury done to the feelings of the plaintiff, but also the injury done to the feelings of those persons connected with or related to the victim of the seduction. It is true, that this practice of giving damages for the injured feelings of the family, is contrary to the strict rule of law, which requires that the plaintiff should recover *secundum allegata et probata*. If, however, we consider the nature of this injury, and the effect that it produces upon domestic peace and happiness, we can have no cause to regret that courts of justice have, with such great liberality, recognized this practice of regarding something more, than merely the injury sustained by the loss of service. The gratification of a momentary passion by the seducer, brings ruin not only upon the victim of his lust, but disgrace and dishonor upon her family and her friends. Scorned and unpitied by her own sex, she, who would have been the pride of her family, and the ornament of society, becomes the shame of the one, and the outcast of the other. It is indeed impossible, in most cases, for any amount of damages to heal the wounds which the destroyer has inflicted; but still the assessing of damages beyond the loss of service, operates as a punishment to the seducer, and has a tendency to suppress this vice, for which no punishment is provided by our criminal code.

The court, however, erred in permitting the plaintiff below to give evidence of *Polly Porter's* general good conduct. Her character had not been impeached; and the rule is well settled, that witnesses on the part of the plaintiff cannot be examined as to the

general character of the seduced for chastity, until evidence of gen-
eral bad character has been adduced by the defendant.   It has even
been decided, that an allegation by the defendant of a particular
breach of chastity, will not authorize such examination; and also,
that where it appears from the mere cross examination of the daugh-
ter, that she has been guilty of improper conduct, the plaintiff will
not be entitled to call witnesses to her character.   1 *Campb.* 460.
3 *Campb.* 519. 2 *Saund. on Pl. & Ev.* 785.

Enough has been said to show that the judgment must be rever-
sed.

Judgment reversed.